<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| WANDA FISHER; SCOTT FISHER, husband and wife, | : | Civil No. 04-CV-2780 (JLL) |
| Plaintiffs, | : | |
| v. | : | OPINION |
| TEVA PFC, SRL, an Israeli corporation formerly known as INDUSTRIA CHIMICA FARMACEUTICA ITALIANA, SRS, an Italian corporation and also formerly known as ALFA CHEMICALS ITALIANA, an Italian corporation, | : | |
| Defendant. | : | LINARES, District Judge |

**<u>Introduction</u>**

This matter is before the Court on defendant's motion for summary judgment for lack of personal jurisdiction. The Court has considered the submissions in support of and in opposition to the motion, as well as the oral arguments advanced on May 18, 2005. For the reasons set forth below, defendant's motion is GRANTED.

**<u>Background</u>**

As the Court writes only for the parties, it will not revisit the facts. Defendant[1] has (or had) the following contacts with the State of New Jersey:

---

[1] The term "defendant," of course, refers to any of the corporate manifestations of Teva PFC during the relevant time period: PFC Italiana, Honeywell PFC, Alfa Chemicals Italiana, ICF Italiana, etc.

(1) an agency agreement with Vinchem Inc. USA, a New Jersey company, for the promotion of U.S. sales, which agreement commenced in 1989 and was terminated on December 31, 1996;

(2) a series of visits by defendant's employees to Vinchem from 1989 to 1996; and

(3) direct shipments of fenfluramine samples from defendant to New Jersey companies Invamed, PurePac, and Ohm Laboratories in 1996, as well as current and past sales of products (other than fenfluramine) to an unrelated affiliate located in New Jersey.

The Court recognizes the dispute over whether defendant, when it was PFC Italiana, maintained an office in Bedminster, New Jersey, or whether the Bedminster office was that of a separate corporate entity, PFC U.S.A.  Having considered the arguments and evidence before it, the Court resolves this issue in favor of defendant.  At oral argument, counsel for plaintiffs suggested that PFC U.S.A. did not exist.  (See Tr. of 5/18/05 at 39:1-40:19.)  The evidence, however, directly refutes that contention.  Specifically, on June 13, 1998, Delaware's Secretary of State certified the merger of PFC U.S.A., which she identified as a Delaware corporation, with AlliedSignal, Inc.  (See Certificate of Merger of 6/13/98.)  Also, on June 19, 1998, Kathleen Gianetti, who worked at the Bedminster office, forwarded her resignation as a director to PFC U.S.A.  (See Letter from Gianetti to PFC U.S.A. of 6/19/98.)  Moreover, the employment agreement Ms. Gianetti signed in June 1998 with AlliedSignal identifies her employer as PFC U.S.A.  In particular, the agreement states that "[Ms. Gianetti] has been employed by PFC USA under an agreement between PFC USA, Pharmaceutical Fine Chemicals S.A. ('PFC') and [Ms. Gianetti] dated February 15, 1998 ... ."  (AlliedSignal Employment Agreement of 6/4/98, at 1.)  All of this evidence shows that PFC U.S.A. did in fact exist, and that one of its employees, Ms.

Gianetti, ran an office out of Bedminster, New Jersey.[2]

The only evidence that plaintiffs have marshaled in support of their contention that the Bedminster office was run by defendant instead of a separate corporate entity is the deposition testimony of a Vinchem employee, Vincent Ursino, that defendant fired Vinchem to set up its own office in New Jersey, and the deposition of Ms. Gianetti, during which she appeared to state that she worked for PFC Italiana, PFC U.S.A., or both. Mr. Ursino's testimony, in addition to being inadmissible – it appears to be both hearsay and speculative, see Fed. R. Evid. 602, 801(c) – is not even particularly probative. He testifies that defendant planned to open a "sales office" in New Jersey, and that defendant did eventually have such an office at which Ms. Gianetti worked (Ursino Dep. at 42:12-43-20), but he states nothing concerning whether that office was actually operated by defendant or merely by a separate entity (i.e., PFC U.S.A.). As for Ms. Gianetti's testimony, it reveals nothing more than that she may have worked for both PFC Italiana and PFC U.S.A. (See Gianetti Dep. at 14:2-15, 16:23-17:1.) She offers no insight into whether the Bedminster office was operated by PFC Italiana or PFC U.S.A. Furthermore, her

---

[2]Plaintiffs' motion to strike the third declaration of Amy Richter is DENIED. First, plaintiffs' argument that the declaration and exhibits are contradicted by other testimony is directed to the weight of these submissions, not their admissibility, authenticity, and the like. Second, with respect to Ms. Richter's competence as an affiant, the Court notes that it is relying primarily on the exhibits themselves, rather than Ms. Richter's commentary as to their import. Ms. Richter, as a paralegal at Honeywell International, is certainly competent to testify as to how and where she obtained the Honeywell records appended to her certification (see Third Richter Decl. ¶¶ 1-2), and in the absence of evidence of fraud or fabrication, the Court considers these records in the disposition of this motion. Third, while the Court appreciates plaintiffs' argument concerning timeliness, the Court is within its discretion to excuse the lateness of these submissions. As discussed, plaintiffs' counsel asserted at oral argument that PFC U.S.A. never even existed, and given the potentially dispositive nature of this particular factual dispute, see generally Perkins v. Benguet Consol. Mining Co., 342 U.S. 437 (1952), the Court will not disregard highly probative evidence for technical reasons.

3

employment agreement with AlliedSignal indicates that Ms. Gianetti was an employee of PFC U.S.A., not PFC Italiana, during a four-month period in 1998.  (See AlliedSignal Employment Agreement of 6/4/98, at 1.)  While this is not evidence that Ms. Gianetti was not working for PFC Italiana in New Jersey before commencement of her employment with PFC U.S.A. in February 1998, there is nothing in the record indicating a transfer of ownership or control of the Bedminster office from PFC Italiana (i.e., defendant) to PFC U.S.A. at that time.  Indeed, there is no documentary evidence linking PFC Italiana, as opposed to PFC U.S.A., to the Bedminster office at any time.  For all these reasons, the Court will not consider this office a New Jersey "contact" for purposes of its jurisdictional analysis.[3]

In sum, the record reflects three types of contacts that defendant has with the State of New Jersey: (1) a distribution agreement with a New Jersey-based corporation, (2) New Jersey visits by employees, and (3) general product sales to New Jersey corporations.[4]  The Court now addresses the law to be applied to defendant's contacts with this forum.

---

[3]The Court also does not consider it particularly relevant that defendant, while it was owned by Honeywell International, reported to Honeywell in New Jersey.  (See Pls.' Br. at 24-26.)  Honeywell International is not a party to this action, and this Court is not about to impute a parent company's New Jersey actions to its Italian subsidiary.  Cf. Seltzer v. I.C. Optics, Ltd., 339 F. Supp. 2d 601, 609 (D.N.J. 2004) (subsidiary's forum contacts not imputed to parent without a showing of agency, alter ego, or the like).

[4]The Court acknowledges that it may have excluded certain events which might constitute "contacts" with the State of New Jersey.  Nevertheless, having thoroughly reviewed the record in this case, the Court has not discovered any State contacts that would not fall under one of the three categories just enumerated, namely, distribution agreements, visits, and sales.

**Discussion**

I.   *Specific In Personam Jurisdiction*

Preliminarily, the Court dispenses with the notion that it may exercise <u>specific</u> personal jurisdiction over this action. Such jurisdiction is properly exercised only when a defendant's contacts with the forum state give rise to the asserted claims.[5] <u>Seltzer v. I.C. Optics, Ltd.</u>, 339 F. Supp. 2d 601, 609 (D.N.J. 2004) (citing <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 416 (1984)). There is no evidence on the record that any of defendant's contacts with the State have anything to do with plaintiffs' claims. <u>Cf.</u> <u>Fisher v. Prof'l Compounding Ctrs. of Am., Inc.</u>, 311 F. Supp. 2d 1008, 1014 (D. Nev. 2004) (holding lack of specific in personam jurisdiction over near-identical claims by these very plaintiffs against this very defendant, because those claims arose out of activities in Utah). To the contrary, it appears beyond dispute that plaintiff Wanda Fisher was prescribed fen/phen in Utah, procured it there, and ingested it there. <u>See</u> <u>id.</u> at 1010-11; <u>Fisher v. Prof'l Compounding Ctrs. of Am., Inc.</u>, 318 F. Supp. 2d 1046, 1050-51 (D. Nev. 2004) ("<u>Fisher II</u>"). The Court therefore turns to the issue of general in personam jurisdiction.

II.   *General In Personam Jurisdiction*

When civil claims do not arise out of a defendant's contacts with the forum state, due process requires that those contacts be "continuous and systematic" before that defendant may be

---

[5] New Jersey law permits courts to exercise jurisdiction over non-residents to the full extent of the Due Process Clause of the U.S. Constitution. N.J. Sup. Ct. R. 4:4-4(c)(1). Accordingly, the Court's jurisdictional analysis concerns itself solely with due process under the Fourteenth Amendment. <u>See</u> Fed. R. Civ. P. 4(k)(1)(A) (federal jurisdiction extends as far as forum state law permits).

haled into court. Helicopteros, 466 U.S. at 414-15 (quoting Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 438 (1952)). "Obviously this is a much higher threshold to meet for the facts required to assert this 'general' jurisdiction must be 'extensive and persuasive.'" Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587, 589 (3d Cir. 1982) (citation omitted). This higher threshold demands contacts with the forum "'that approximate physical presence.'" William Rosenstein & Sons Co. v. BBI Produce, Inc., 123 F. Supp. 2d 268, 274 (M.D. Pa. 2000) (quoting Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000)); see also Helicopteros, 466 U.S. at 417-18 (holding that trips to a forum state relating to purchasing agreements, "even if occurring at regular intervals, would not warrant the inference that the corporation was present within the jurisdiction of [that forum]") (quotes and citation omitted).

The Court finds that defendant's contacts with the State of New Jersey are insufficiently continuous and systematic to support the exercise of jurisdiction over this action.

First, the in-state presence and activities of Vinchem, with whom defendant had a distribution agreement during the relevant time period, may not be imputed to defendant. This Court must respect the distinct corporate identities of these entities, unless there is sufficient evidence to demonstrate that Vinchem was acting as an agent or "alter ego" of defendant. See Seltzer, 339 F. Supp. 2d at 609; see also BP Chems. Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 262-63 (3d Cir. 2000) (refusing to pierce corporate veil and assert general jurisdiction over one entity for the activity of another). The agreement between Vinchem and defendant granted the former the "exclusive right of promoting the sale of [defendant's] Products in the [United States]" but stated that "[n]either the above grant nor anything else contained in this

6

Agreement shall be construed as giving to [Vinchem] the power of legally representing [defendant's parent] and binding it as the principal in any representation, commitment or agreement made by [Vinchem] in connection with the sale of the Products." (Agency Agreement Between Alfa Wasserman S.p.A. & Vinchem Inc. USA, art. II, ¶¶ 1-2.) This language is an express disavowal of an agency relationship, see Seltzer, 339 F. Supp. 2d at 609 (setting forth the distinction between an agent and independent contractor), and the Court upholds it.

Second, defendant's employees' visits to Vinchem in New Jersey were neither continuous nor systematic. Plaintiffs' proof of these visits is found solely in the deposition testimonies of Mr. Ursino and Claudio Cremonesi, one of defendant's employees. Mr. Ursino, however, testified only that Mr. Garabaldi, a representative of defendant, visited New York perhaps once a year (Ursino Dep. at 13:6-14:9), that Mr. Garibaldi's successor visited "either ... New York or New Jersey" at least once a year (id. at 15:4-13), and that other of defendant's employees visited New York or New Jersey on a few occasions (id. at 15:25-18:21). Likewise, Mr. Cremonesi's testimony – at least those portions submitted by plaintiffs – demonstrates only that he visited the "United States" up to three times a year (Cremonesi Dep. at 47:11-25), and that Franco Tossi, another employee of defendant, visited Vinchem in the "United States on occasion" (id. at 50:4-16). Insofar as any of Mr. Ursino's or Mr. Cremonesi's testimony establishes New Jersey visits at all, under no fair interpretation of the words "continuous" or "systematic" could these supposed contacts be viewed as such. Also, business trips of this nature – that is, somewhat frequent visits with an independent distributor in furtherance of a broad, exclusive distribution agreement – do not, in this Court's opinion, justify an inference that a corporate defendant was continuously and systematically "present" in New Jersey. See Helicopteros, 466 U.S. at 417-18

(finding visits for personnel training insignificant for purposes of general jurisdiction); Rosenberg Bros. & Co. v. Curtis Brown Co., 260 U.S. 516, 518 (1923) (finding visits incident to a purchasing arrangement with wholesalers unsupportive of an inference of presence within the forum state).

Third, defendant's sales in the State of New Jersey are far too unsubstantial to justify an exercise of general in personam jurisdiction, even when considered in combination with the other limited forum contacts. Engaging in commerce with the forum state "is not in and of itself the kind of activity that approximates physical presence within the state's borders." Augusta Nat'l, 223 F.3d at 1086. It amounts to doing business with the State, not in the State. Id. The sales at issue here, many of which are either highly speculative (see Pls.' Br. at 11-13) or arranged indirectly through an independent distributor (see id. at 5 n.5), resemble the types of sales that have been held insufficient to constitute in-state presence. See, e.g., Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1124-25 (9th Cir. 2002) (holding that defendant's contacts with California, which included an in-state independent distributor and sixteen direct rice shipments into the state, were insufficient for general jurisdiction); Seltzer, 339 F. Supp. 2d at 612 (holding that direct sales to New Jersey and other relevant contacts were insufficient for general jurisdiction). "It would be patently unfair to allow any and all plaintiffs to sue [defendant] in [New Jersey], simply because [defendant] makes a small part of its ... sales to [New Jersey] purchasers." BBI Produce, 123 F. Supp. 2d at 274. These sales are simply not significant enough for an assertion of jurisdiction in a forum with absolutely no relation to the claims in this action.

To recapitulate, defendant's contacts with New Jersey – namely, its distributor

agreements, sporadic employee visits, and a tiny percentage of its sales – are neither continuous nor systematic.  Defendant owns no property, has no employees, keeps no bank accounts, operates no offices, maintains no mailing address, and has designated no agent for service of process in New Jersey.  Consequently, an exercise of general in personam jurisdiction over this defendant would not comport with due process.

III.   *Reasonableness*

Finally, the Court notes that, even if defendant had the requisite contacts with the State as a technical matter, an exercise of jurisdiction would be unreasonable; that is, it would fail to comport with "traditional notions of fair play and substantial justice."  Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113 (1987) (citation omitted).  The reasonableness analysis entails consideration of, among other things, the burden on defendant, the State's interest in this dispute, the interstate judicial system's interest in efficient resolutions of controversies, and the importance of this State to plaintiffs' interest in effective and convenient relief, Glencore Grain, 284 F.3d at 1125, all of which counsel heavily against an assertion of jurisdiction over this action, which involves Nevadan plaintiffs, who were allegedly injured nowhere near this State, and an Italian defendant with only tenuous contacts with the forum.  "In dealing with foreign defendants, in particular, the Supreme Court has warned that 'great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.'" Seltzer, 339 F. Supp. 2d at 613 (quoting Asahi, 480 U.S. at 115).  New Jersey has absolutely no interest in this lawsuit, haling defendant into this Court from Italy would be tremendously burdensome, and plaintiffs, having lost on this very issue in Nevada, see Fisher II, 318 F. Supp.

2d at 1050, appear to be shopping for <u>any</u> forum within which to sue this particular foreign defendant. As a result, this Court could not exercise jurisdiction here without offending traditional notions of fair play and substantial justice.

## Conclusion

For the reasons set forth above, plaintiffs' motion to strike the third declaration of Amy Richter is DENIED, and defendant's motion for summary judgment for lack of personal jurisdiction is GRANTED.

DATED: August 15, 2005                              /s/ Jose L. Linares
                                                    United States District Judge